UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
MOHAMAD AHMAD,                                                    :
                                                                  :
                              Plaintiff,                          :
                                                                  :
              -v-                                                 :            24 Civ. 6926 (JPC)
                                                                  :
                                                                  :            <u>OPINION AND ORDER</u>
RIVER POINT TOWERS COOPERATIVE, INC., *et al.*                    :
                                                                  :
                              Defendants.                         :
                                                                  :
------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Plaintiff Mohamad Ahmad brings this action against Defendants River Point Towers Cooperative, Inc. ("RPT"), Vanessa Ortiz, Ilana Serot, Albert Burgunder, Ari Steinberg, Carl Reinlib, and Martin Sandler pleading violations of 42 U.S.C. § 1981 and the New York City Human Rights Law ("NYCHRL") arising from Defendants' allegedly discriminatory conduct. RPT, Ortiz, Serot, Burgunder, Steinberg, and Reinlib (together, the "Moving Defendants")—*i.e.* all Defendants except Sandler—have moved to dismiss Ahmad's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

As pleaded, Ahmad's Section 1981 claims against the Moving Defendants are squarely precluded by the Supreme Court's decision in *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006). Thus, and for reasons that follow, the Court grants the motion with respect to Ahmad's Section 1981 claims. Because these grounds for dismissal appear to apply equally to Sandler, the Court puts Ahmad on notice of its intent to *sua sponte* dismiss his Section 1981 claim against Sandler as well. Within fourteen days of this Opinion and Order, Ahmad shall submit any arguments as to why that claim should not also be dismissed, as well as any further arguments in

support of the Court's exercise of supplemental jurisdiction over his state-law claims as such arguments pertain to Sandler. The Court holds the remainder of the motion in abeyance pending that submission.

## I. Background

### A.    Facts[1]

RPT is a "domestic cooperative corporation" that owns and operates a cooperative apartment building located in the Bronx. Compl. ¶¶ 4-5. Ahmad is a "Syrian, Muslim man" who owns a unit in that apartment building. *Id.* ¶ 11. He also owns and operates M.A. Painting Corp. ("Painting Corp."), which from 1994 to 2022 "had a contract with Defendant RPT to make cooperative-responsible apartment repairs ('retainer work')." *Id.* ¶¶ 13-14. "Painting Corp. was also routinely hired by individual shareholders of Defendant RPT to do private renovations and repairs" in their apartment units. *Id.* ¶ 14. Although Ahmad enjoyed healthy relationships with RPT and the other residents for more than two decades, those relationships swiftly deteriorated once Sandler moved into the building. *Id.* ¶¶ 15-16.

Shortly after becoming a resident in February 2020, Sandler complained to RPT's building management and Board of Directors that Ahmad was performing work for residents in violation of the COVID-19 quarantine guidelines. *Id.* ¶¶ 16, 19, 21. Though nothing came of those complaints, Ahmad alleges that Sandler began subjecting him to "racist harassment on almost a daily basis." *Id.* ¶¶ 20, 22. Sandler, for example, distributed flyers "advising the residents not to vote for the then existing Board of Directors based on their relationship with [Ahmad] and his

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Complaint, Dkt. 1 ("Compl."). *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").

2

business," *id.* ¶¶ 23-24, "encourage[d] other residents not to hire" Ahmad, *id.* ¶ 27, stalked Ahmad, *id.* ¶ 34, and screamed at him in front of other residents and in public, *id.* ¶¶ 29-30.  Ahmad contends that Sandler's conduct was motivated by discriminatory animus toward his ethnicity and national origin, *id.* ¶ 28, pointing to several racist statements that Sandler allegedly made to Ahmad, *see, e.g.*, *id.* ¶¶ 30, 35, 87.  Ahmad also alleges that, on at least two occasions, Sandler's behavior became so worrisome that Ahmad contacted law enforcement.  *See id.* ¶ 32 (alleging that Ahmad told the building's general manager that Sandler had harassed him outside a bank and that Ahmad had filed complaints against Sandler with the police); *id.* ¶¶ 110-111 (alleging that in May 2023, Sandler screamed at Ahmad using racial overtones and threatening to kick Ahmad out of the building, resulting in Ahmad contacting the police out of fear for his safety).

Concerned by Sandler's behavior, Ahmad complained to RPT's Board of Directors and the building's general manager multiple times in 2022.  *Id.* ¶¶ 31-32, 51.  In May of that year, RPT's management changed: Ortiz was elected president of the Board, Serot was elected vice president, and Burgunder was elected treasurer.  *Id.* ¶¶ 37, 39.  Instead of addressing Ahmad's concerns about Sandler's racist behavior, these Board members allegedly defended Sandler's conduct and joined in the harassment.  *See, e.g.*, *id.* ¶ 40 (alleging that Serot instructed a superintendent "to give [Ahmad] and his company, Painting Corp., a hard time about repairs that he was performing"); *id.* ¶¶ 51-60 (alleging that Ortiz, Burgunder, and the rest of the Board of Directors threatened Ahmad with financial harm after he complained about Sandler); *id.* ¶ 63 (alleging that Ahmad was "harassed on an almost daily basis" by Sandler, Ortiz, Serot, and Burgunder, as well as by "other Defendant RPT staff who were . . . acting on the orders of the Board of Directors"); *id.* ¶ 76 (alleging that Ortiz, Sandler, and Serot stalked Ahmad "through cameras and in person").  This alleged harassment culminated in the Board delaying payment for Ahmad's work, notifying him

that it would no longer approve his private projects for residents, and telling him that "he should just leave the apartment cooperative." *Id.* ¶¶ 83-84.  Ahmad also contends that at least one of the Board members, Oritz, harassed him because of his ethnicity. *Id.* ¶ 75.

In July 2022, Reinlib became the general manager of the apartment cooperative. *Id.* ¶ 88. Ahmad claims that Reinlib "immediately joined in on the daily harassment" by, among other things, allegedly "delaying approvals of [Ahmad's] private apartment work," *id.* ¶ 89, and "constantly inspect[ing] and interfer[ing] with private contracted work," *id.* ¶ 93.  Eventually, Reinlib told Ahmad "to immediately stop doing private work at Defendant RPT, and that the Board was canceling their contract with Painting Corp." *Id.* ¶ 99.  And when Ahmad threatened legal action with respect to the cancellation of that contract, Reinlib allegedly responded with a racist tirade. *Id.* ¶¶ 104-105.  Since then, Ahmad has performed neither retainer nor private work at the apartment cooperative. *Id.* ¶ 106.

## B.    Procedural History

Ahmad commenced this action on September 13, 2024, seeking declaratory relief and monetary damages.  Compl. ¶ 136.  He asserts two causes of action for discrimination against all Defendants: one under 42 U.S.C. § 1981, *id.* ¶¶ 117-126 (First Cause of Action), and another under the NYCHRL, N.Y.C. Admin. Code § 8-107, *id.* ¶¶ 127-135 (Second Cause of Action).  In both causes of action, Ahmad asserts that RPT, through its Board members and/or employees, "engaged in unlawful employment practices" by "discriminating against [Ahmad] on the basis of his ethnicity when they stalked [Ahmad], harassed [Ahmad], threatened [Ahmad], denigrated [Ahmad], subjected him to racist vitriol, and interfered with his contractual and private work, and supported one of their shareholders, Defendant Sandler, in engaging in the same and similar conduct." *Id.* ¶¶ 121, 130.  Ahmad claims that RPT is "vicariously liable" for the actions of its

Board members and Sandler, and that the other Defendants are "individually liable for their own intentional, malicious, hateful and discriminatory conduct." *Id.* ¶¶ 122-123, 131-132.[2] Due to Defendants' action, Ahmad alleges that he "has suffered, and continues to suffer, severe mental anguish and emotional distress," as well as "economic loss." *Id.* ¶¶ 124-125, 133-134.

On December 17, 2024, the Moving Defendants moved to dismiss the Complaint with prejudice under Rule 12(b)(6). Dkts. 39, 41 ("Motion"). Ahmad filed his opposition on January 21, 2025, Dkt. 44 ("Opposition"), and the Moving Defendants replied on January 28, 2025, Dkt. 51 ("Reply"). On January 27, 2025, the Court adjourned Sandler's deadline to respond to the Complaint until after the resolution of the Moving Defendants' motion to dismiss. Dkt. 48.

## II. Legal Standard

Rule 12(b)(6) allows a court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a claim to survive a motion to dismiss, it must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility depends on whether the "plead[ed] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although a court presumes as true all facts alleged in the complaint and draws all reasonable inferences in favor of the plaintiff, *see Kassner v. 2nd Ave.*

---

[2] Although Ahmad describes the First Cause of Action, in its heading, as being brought "against all Defendants," Compl. at 15, he alleges that "RPT is vicariously liable" and that "Sandler, Ortiz, Serot, Burgunder, Lleshaj and Reinlib are individually liable," *id.* ¶¶ 122-123. Martin Lleshaj, a building superintendent, *see id.* ¶ 40, is not a Defendant in this case. Ahmad does not allege that Steinberg, who is a Defendant, is "individually liable" with respect to the First Cause of Action, as Ahmad does in the Second Cause of Action. *Compare id.* ¶ 123, *with id.* ¶ 132. The Court presumes that Ahmad intended to plead individual liability against Steinberg instead of Lleshaj in the First Cause of Action.

*Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007), this presumption does not apply to "'legal conclusions' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2007) (quoting *Iqbal*, 556 U.S. at 678). When deciding a Rule 12(b)(6) motion, a district court may consider, in addition to the factual allegations in the complaint, "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

### III. Discussion

The Moving Defendants argue, among other things, that Ahmad lacks statutory standing to assert a cause of action under Section 1981. Motion at 7-9.[3]

Section 1981 protects the equal right of "[a]ll persons within the jurisdiction of the United States" to "make and enforce contracts," which "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b). To assert a cause of action under this aspect of Section 1981, a plaintiff must allege that "he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'" *Domino's Pizza*, 546 U.S. at 479-80. In other words, "Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." *Id.* at 480.

Ahmad alleges that, as a result of the Moving Defendants' alleged Section 1981 violations, he "suffered, and continues to suffer, severe mental anguish and emotional distress" as well as

---

[3] The Court at this time does not consider the Moving Defendants' other arguments that Ahmad fails to state a claim under the NYCHRL, Motion at 9-11, that Section 1981 does not give rise to a claim based on national origin discrimination, *id.* at 12, and that Ahmad has not alleged sufficient facts showing that Reinlib or Steinberg actively participated in the activity about which Ahmad complains, *id.* at 12-13.

"economic loss." Compl. ¶¶ 124-125. What Ahmad fails to allege, however, is that any of these injuries "flow[ed] from a racially motivated breach of [*his*] *own* contractual relationship." *Domino's Pizza*, 546 U.S. at 480 (emphasis added). To be sure, the Complaint plausibly identifies two types of contractual relationships with which Ahmad claims the Moving Defendants interfered: Ahmad's "retainer" work with RPT and his "private" work for building residents. *See, e.g.*, Compl. ¶¶ 40, 84, 89, 93, 99, 103. But, as alleged, neither of these categories of work involves "an impaired contractual relationship under which [Ahmad] has rights." *Domino's Pizza*, 546 U.S. at 476 (citation and internal quotation marks omitted). As a result, Ahmad lacks a cause of action under Section 1981.

Starting with the first category, Ahmad alleges that "Painting Corp. had a contract with Defendant RPT to make cooperative-responsible apartment repairs ('retainer work') starting in 1994 and lasting through 2022." Compl. ¶ 14. The Moving Defendants allegedly interfered with this contractual relationship by, for example, "giv[ing] [Ahmad] and his company, Painting Corp., a hard time about repairs that he was performing . . . pursuant to [Ahmad's] retainer work with Defendant RPT." *Id.* ¶ 40; *see also id.* ¶ 48 (alleging that Ahmad "received a 'stop work' letter from Defendant RPT stating that Painting Corp. needed to provide proof of insurance that met the building's current insurance requirements"). Indeed, the Moving Defendants allegedly went so far as "canceling their contract with Painting Corp.," *id.* ¶ 99, due to Ahmad's ethnicity, *id.* ¶ 121. But by Ahmad's own allegations, this contractual relationship was between Painting Corp. and RPT—not between Ahmad and RPT. *See id.* ¶ 14. Ahmad, of course, "owns [] Painting Corp.," *id.* ¶ 13, but "it is fundamental corporation and agency law—indeed, it can be said to be the whole purpose of corporation and agency law—that the shareholder and contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts."

*Domino's Pizza*, 546 U.S. at 477.  Because Ahmad nowhere alleges that he enjoys any "rights under the . . . contractual relationship" between Painting Corp. and RPT, he cannot bring a Section 1981 claim alleging interference with that relationship.  *Id.* at 476.

Moving to the second category—Ahmad's "private" work—the Complaint similarly fails to identify any existing or proposed contract with respect to which Ahmad has or would have any rights.  In addition to the retainer work, Ahmad alleges that "Painting Corp. was also routinely hired by individual shareholders of Defendant RPT to do private renovations and repairs."  Compl. ¶ 14; *see also id.* ¶ 104 (mentioning "private contracts with individual residents").  According to Ahmad, the Moving Defendants interfered with these contractual relationships as well.  On July 11, 2022, for example, Ahmad had "prepared an apartment renovation contract for tenant S.S.," but RPT's Board refused to "approve[] the job" for more than three months.  *Id.* ¶¶ 90-91.  Ahmad also had "already been contracted to complete an $11,000.00 job" for one resident and had "drawn up" a near-$100,000 contract for another, when he was told that he "was no longer allowed to perform private . . . work" at the building.  *Id.* ¶¶ 101-103.  In all, Ahmad alleges that "he had already been hired to do 3 private jobs and was expecting 2 more."  *Id.* ¶ 100.  Yet, as with the retainer work Ahmad performed for RPT, Ahmad alleges that the tenants "hired" "Painting Corp.," not Ahmad directly, to perform those "private renovations and repairs."  *Id.* ¶ 14.  Similarly, then, Ahmad fails to allege that he "has (or would have) rights under the existing (or proposed) contract[s] that he wishes 'to make and enforce'" with the individual residents.  *Domino's Pizza*, 546 U.S. at 479-80.  Absent such rights, Ahmad cannot bring a Section 1981 claim premised on interference with those private contractual relationships.

In response to the Moving Defendants' arguments for dismissal, Ahmad insists that he can properly assert a Section 1981 claim because "he suffered direct and individual injuries" separate

from the harm suffered by Painting Corp., Opposition at 4-8, and he attempts to distinguish prior caselaw from the facts of this case, *id.* at 8-10. Ahmad's arguments are unavailing.

First, Ahmad contends that "individuals can seek redress under Section 1981 for discriminatory acts that directly harm them, irrespective of whether a corporate entity also suffers harm," and points to "numerous instances of personal harm caused by Defendants' discriminatory conduct." *Id.* at 5. But whether Ahmad "experienced direct emotional, reputational, and financial harm unrelated to [] Painting [Corp.]," *id.*, is entirely beside the point. To reiterate, Section 1981 protects the right "to make and enforce contracts." 42 U.S.C. § 1981(a). Without "identify[ing] an impaired 'contractual relationship' under which [he] has rights," *Domino's Pizza*, 546 U.S. at 476 (citation omitted), Ahmad cannot proceed with a Section 1981 claim. Full stop. It is not enough, for purposes of Section 1981, for Ahmad to have been "an 'actual target' of discrimination, and [to have] los[t] some benefit that would otherwise have inured to him had a contract not been impaired." *Id.* at 478. In other words, Ahmad's individual harms do not move the ball if they do not stem from an impaired contractual relationship *of his*.

Ahmad relies heavily on the District of Vermont's decision in *Robinson v. Davis*, No. 07 Civ. 265 (JGM), 2010 WL 4062863 (D. Vt. Oct. 15, 2010), in making this argument. *See* Opposition at 7-8. He claims that the court in *Robinson* "emphasized that emotional distress caused by discriminatory conduct can constitute a direct and independent injury sufficient to establish standing under Section 1981," and concluded that "a 'shareholder, or officer or employee, does have standing . . . where he or she has been injured directly and independently of the corporation.'" *Id.* at 7 (quoting *Robinson*, 2010 WL 4062863, at *2). Ahmad is mistaken. The plaintiff in *Robinson* brought claims under a different statute—42 U.S.C. § 1983—and one which does not require a predicate contract. *Robinson*, 2010 WL 4062863, at *1. *Robinson* thus has no

bearing on Ahmad's ability to assert a claim under Section 1981.  *See id.* at *2 (noting that "the claims in *Domino's* [*Pizza*] were asserted under a different statute than the claims in this case" (footnote and internal quotation marks omitted)).

Second, Ahmad argues that the Moving Defendants' reliance on *Domino's Pizza* and *Henderson v. Golden Corral Franchising Systems, Inc.*, No. 19 Civ. 2878 (NSR), 2021 WL 4392525 (S.D.N.Y. Sept. 23, 2021), is misplaced.  Opposition at 8-10.  In Ahmad's view, those two cases "underscore the distinction between derivative harm to a corporation and direct, independent harm to an individual, which is precisely what Plaintiff Ahmad alleges in this case." *Id.* at 8.

With respect to *Domino's Pizza*, Ahmad attempts to identify two "crucial factual distinctions." *Id.* at 9.  First, Ahmad contends that "he was personally a party to the contractual relationship with RPT as a contractor and performed the services in his individual capacity." *Id.* (citing Compl. ¶¶ 17, 40).  The Complaint tells a different story, however: "*Painting Corp.* had a contract with Defendant RPT to make cooperative-responsible apartment repairs" and "*Painting Corp.* was also routinely hired by individual shareholders of Defendant RPT to do private renovations and repairs." Compl. ¶ 14 (emphases added).  The two paragraphs of the Complaint that Ahmad points to in support of his argument do not allege anything to the contrary. *See id.* ¶ 17 ("As was Plaintiff's custom, he introduced himself to Defendant Sandler and advised him of his availability to perform renovations and repairs on his apartment."); *id.* ¶ 40 ("[Ahmad] was advised by a building superintendent, Martin Lleshaj, that he had been instructed by Defendant Serot to give Plaintiff and his company, Painting Corp., a hard time about repairs that he was performing . . . [that] were being made pursuant to Plaintiff's retainer work with Defendant RPT.").  As detailed above, the only contractual relationships plausibly alleged in the Complaint

involve Painting Corp.—not Ahmad—as a party.  Ahmad is "not entitled to amend [his] complaint through statements made in motion papers." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (internal quotation marks omitted).  And just as in *Domino's Pizza*, it is irrelevant whether Ahmad "negotiated, signed, performed, [or] sought to enforce" the contract.  546 U.S. at 477 (internal quotation marks omitted).  Absent rights under the relevant contract, Ahmad cannot bring a Section 1981 claim.

Ahmad also attempts to distinguish *Domino's Pizza* on the ground that his "injuries extend beyond corporate harm to include personal harassment, reputational damage, and emotional distress"—injuries he claims are "wholly distinct from any harm to [] Painting [Corp.]" Opposition at 9.  But much like Ahmad, the plaintiff in *Domino's Pizza* also alleged that the breach "harmed [him] personally" by inflicting upon him "pain and suffering, emotional distress, mental anguish, and humiliation"—injuries that cannot be suffered by a corporate entity.  546 U.S. at 473-74 (internal quotation marks omitted).  The plaintiff's allegations as to these personal injuries made no difference in the Supreme Court's analysis.  *Id.* at 478-79.  Contrary to Ahmad's efforts to distinguish *Domino's Pizza*, that decision squarely controls and requires dismissal of Ahmad's Section 1981 claims against the Moving Defendants.  *See id.* at 477-80 (holding that the plaintiff, the sole shareholder and president of the corporation, could not state a claim under Section 1981 against the defendant because the corporation, not the plaintiff individually, was the contracting party).

Ahmad's attempt to distinguish the district court's decision in *Henderson*, also relied upon by the Moving Defendants, *see* Motion at 8-9, fares no better.  In that case, the plaintiff—a disabled African American woman who entered into a franchise agreement with Golden Corral—brought a Section 1981 claim alleging that Golden Corral racially discriminated against her in terminating

the contract. *Henderson*, 2021 WL 4392525, at *1-3. Because the plaintiff had assigned her rights under the agreement to "her 'holding company'" and was no longer a party to the contract, the court determined that she lacked a cause of action under Section 1981. *Id.* at *2, *6-7. Ahmad suggests that *Henderson* has little bearing on the instant case because he "has made no such assignment of rights," and because "Defendants directly interfered with his personal ability to perform under [the] contracts with RPT and private residents." Opposition at 9. But once again, Ahmad's arguments miss the mark. Ahmad would not have been able to assign any rights under the relevant contracts because, as a non-party to those agreements, he had no rights to assign. And what matters for the purposes of Section 1981 is not that Ahmad's ability to perform a contract was impaired, but that he suffered "injuries flowing from a racially motivated breach of [*his*] *own* contractual relationship." *Domino's Pizza*, 546 U.S. at 480 (emphasis added).

Because Ahmad fails to allege that "he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce,'" he "cannot state a claim under § 1981." *Id.* at 479-80. Accordingly, the Court dismisses Ahmad's Section 1981 claims against the Moving Defendants.

## IV. Conclusion

For the reasons provided above, the Court dismisses Ahmad's First Cause of Action, asserted under Section 1981, as against the Moving Defendants. The grounds justifying dismissal of Ahmad's Section 1981 claims against the Moving Defendants appear to apply equally to Ahmad's Section 1981 claim against Sandler, the sole non-moving Defendant. Accordingly, no later than fourteen days from the date of this Opinion and Order, Ahmad shall (1) show cause why dismissal of his Section 1981 claim against Sandler is not also appropriate given the analysis in this Opinion and Order and (2) advance any further arguments as to whether the Court should

exercise supplemental jurisdiction over his state-law claims as such arguments pertain to Sandler, *see* Motion at 1, 13 (urging the Court to decline to retain supplemental jurisdiction over Ahman's state-law claims if his Section 1981 claims are dismissed); Reply at 1, 6-7, 10 (same). The Court holds in abeyance the remainder of the Moving Defendants' motion to dismiss pending that submission.

     SO ORDERED.

Dated: August 4, 2025
     New York, New York

                                         JOHN P. CRONAN
                               United States District Judge